1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   REVEREND HEIDI LEPP, et al.,              No. 2:17-cv-1317-KJM-EFB PS

12                  Plaintiffs,

13          v.                                  ORDER AND FINDINGS AND
                                                RECOMMENDATIONS
14   YUBA COUNTY, et al.,

15                  Defendants.

16

17          Several motions are pending in this action, which are addressed herein.[1]

18      1.  Defendant Brandon Olivera moves to strike plaintiffs Charles Lepp, Aaron O'Connor,

19          and all unrepresented plaintiffs who did not sign the second amended complaint pursuant

20          to Federal Rule of Civil Procedure ("Rule") 12(f).  Olivera also moves to dismiss

21          plaintiffs' second amended complaint for failure to state a claim pursuant to Rule

22          12(b)(6).  ECF No. 68.

23      2.  Defendant Lori Ajax moves to dismiss the second amended complaint for lack of subject

24          matter jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim pursuant to

25          Rule 12(b)(6).  ECF No. 69.

26   /////

27   _____

28       [1]  This case, in which plaintiff is proceeding pro se, is before the undersigned pursuant to
     28 U.S.C. § 636(b)(1) and Eastern District of California Local Rule 302(c)(21).

                                                1

3. Defendants County of Yuba, Jeremy Strange, Chris Monaco, John Vacek, and Brandon Spears move to dismiss the second amended complaint for failure to state a claim pursuant to Rule 12(b)(6). ECF No. 70.

4. Defendant Michael Vroman moves to plaintiffs' second amended complaint pursuant to Rule 12(b)(6). ECF No. 75.

5. Defendant Yolo County Sheriff's Department moves to dismiss the second amended complaint for failure to state a claim pursuant to Rule 12(b)(6). ECF No. 95.

6. Defendants Rick DiBasilio and the Calaveras County Sheriff's Department move to dismiss the second amended complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6). ECF No. 98.

7. Plaintiffs move to vacate an order due to alleged fraud upon the court pursuant to Rule 60(d)(3). ECF No. 109.

8. Defendants Michael Vroman and Yolo County Sheriff's Department move to strike plaintiffs' supplemental complaint. ECF No. 111.

9. Defendant Yuba-Sutter Narcotic Enforcement Team ("Net-5") moves to set aside the clerk's entry of its default. ECF No. 128.

10. Also pending is the court's September 17, 2018 order directing plaintiffs to show cause why sanctions should not be imposed for failure to file oppositions or statements of non-opposition to defendants Michael Vroman and Yolo County Sheriff's Department motion to strike plaintiffs' supplemental complaint. ECF No. 118.

11. Lastly, plaintiffs are ordered to show cause why defendant Jeffery —the only defendant that has not appeared in this action—should not be dismissed for failure to effect service of process in the time prescribed by Rule 4(m).

/////
/////
/////
/////
/////

2

1    As discussed further below, the order to show cause (ECF No. 118) is discharged.  Further, it

2    is recommended that plaintiffs' Rule 60 motion be denied and that the pending motions to

3    dismiss, the motion to strike the supplemental complaint, and defendant Net-5's motion to set

4    aside default be granted.[2]

5    I.    Order to Show Cause

6          In violation of Local Rule 230(c), plaintiffs failed to timely file either oppositions or

7    statements of non-opposition to defendants Vroman and Yolo County Sheriff's Department's

8    motion to strike plaintiffs' supplemental complaint.  Accordingly, plaintiffs were ordered to file a

9    response to the motion to strike and to show cause why sanctions should not be imposed for their

10   violation of Local Rule 230(c).

11         In response, plaintiffs state that plaintiff Heidi Lepp was unable to prepare an opposition

12   due to illness and that plaintiffs Charles Lepp and Aaron O'Connor depend on Ms. Lepp's

13   "ability to use the computer to litigate this case."  ECF No. 119.  Given plaintiffs' pro se status

14   and that they have now filed an opposition to the motion to strike (ECF No. 120), the order to

15   show cause is discharged without imposition of sanctions.

16   II.   Defendant Jeffery Reisig

17         Plaintiffs' second amended complaint, filed April 20, 2018, added defendant Jeffery

18   Reisig as a defendant.  Reisig has not appeared in this action, and there is no indication from the

19   docket that plaintiffs completed service of process for him.  Pursuant to Rule 4(m), a defendant

20   must be served within 90 days after the complaint is filed.  Fed. R. Civ. P. 4(m) (where a

21   defendant is not timely served, "the court—on motion or on its own after notice to the plaintiff—

22   must dismiss the action without prejudice against that defendant . . . .");  Fed. R. Civ. P. 4(l)(1)

23   (requiring that proof of service be made to the court).  Accordingly, plaintiffs shall show cause

24   why defendant Reisig should not be dismissed for failure to effect service of process within the

25   time prescribed by Rule 4(m) and/or failure to prosecute their claims against him.  *See* Fed. R.

26   Civ. P. 41(b).

27   _____

28         [2]  The court determined that oral argument would not be of material assistance to the court
     and the motions were submitted without argument.  E.D. Cal. L.R. 230(g).

3

III.    Plaintiffs' Rule 60 Motion

Plaintiffs have filed a motion that purports to seek relief under Rule 60(d)(3).  ECF No. 109.  They request that the court vacate an unspecified order entered against them on the ground "that said judgment and order was procured through fraud on the court . . . ."  ECF No. 109 at 2.

Apart from plaintiffs' failure to identify a specific order from which they seek Rule 60 relief, they fail to satisfy the standards for such a motion.  Pursuant to Rule 60(b) a court may relieve a party from a final judgment or order if the moving party can show: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; or (6) any other reason that justifies relief.  Fed. R. Civ. P. 60(b).  Under Rule 60(d)(3), a judgment may be set aside for fraud on the court.  Fed. R. Civ. P. 60(d)(3).  "Fraud on the court" is "fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner."  *Alexander v. Robertson*, 882 F.2d 421, 424 (9th Cir. 1989).

Because a final judgment has not been entered in this action, plaintiffs may not obtain relief under Rule 60(b)(3).  Additionally, plaintiffs have failed to submit any evidence demonstrating fraud upon this court by any of the named defendants.  Instead, plaintiffs merely proffer their unsupported conclusions that defendants have engaged in misconduct.  By way of example, they argue that "defendants have prevented the judicial process from functioning 'in the usual manner.'"  ECF No. 109 at 8.  They further claim that defendants "are guilty of defiling the Courts by ignoring Federal and State law, Court rules, doctrines, and rules set by higher courts."  Such conclusory statements are insufficient to demonstrate entitlement to relief, and therefore plaintiffs' Rule 60 motion must be denied.

IV.    Second Amended Complaint

Like the prior complaint, the second amended complaint consists largely of disjointed and conclusory allegation that are difficult to follow.  Liberally construed, the current complaint primarily concerns six separate events: (1) drug enforcement raids occurring in Yuba County in 2014; (2) four simultaneously executed drug raids, including a raid on Ms. Lepp's business,

4

occurring in 2016; (3) alleged harassment by defendant Chris Monaco in 2017, (4) a 2017 incident during which two sheriff deputies were shot; (5) a 2017 raid conducted by the Calaveras County Sheriff's Department; and (6) Ms. Lepp's arrest in late 2017.

Plaintiffs allege that in September 2014, the Yuba County Sheriff's Department, Net-5, California Fish and Game, and an unidentified support team executed a search warrant at Ms. Lepp's home and an organization called "Sugarleaf Productions Industrial Hemp Research Facility and Patient Association." ECF No. 62 ¶ 33. During the search, Ms. Lepp was allegedly sexually abused and exploited, her property—including marijuana plants and "irreplaceable genetics, genotypes, and phenotypes"—were destroyed, and officers improperly searched her computer for emails and other documents. *Id*. ¶¶ 34, 35.

Plaintiffs also alleges that in September 2016, defendants Olivera, Vroman, the Yolo County Sheriff's Department, and Reisig simultaneously executed four raids, including a raid of Ms. Lepp's business which was a "100 % compliant non-profit collective[] permitted in County of Yolo." *Id*. ¶ 51. Ms. Lepp was present during the raid of her business, but was not arrested or charged with a crime. *Id*. Plaintiffs also claim that Ms. Lepp had "an interest in the success" of two of the other businesses that were raided. *Id*. They also appear to allege that defendant Vroman, a deputy district attorney for the County of Yolo (*id*. ¶ 17), and Jeffery Reisig, the Yolo County District Attorney (*id*. ¶ 22), obtained the four search warrants by "omitt[ing] critical information about the" raided businesses (*id*. ¶ 51).

Plaintiffs further allege that in 2017, defendant Monaco, a code enforcement officer, engaged in various types of harassing conduct. *Id*. ¶¶ 61-63. Monaco allegedly left a voicemail with defendant O'Connor concerning a complaint the County of Yuba received about marijuana being grown on property owned by the Yubud Church, a church headed by O'Connor. *Id*. ¶¶ 61, 62. Monaco also allegedly entered land adjacent to the church's property to obtain pictures and video footage of a greenhouse and the church's congregants cultivating marijuana. *Id* ¶ 61. Monaco also allegedly threatened one of the church's congregants and "unabashedly posted hateful and discriminating comments disparaging [plaintiffs'] churches and [their] sacred religious practices . . . ." *Id*. ¶ 63

Plaintiffs further allege that in August 2017, two Yolo County sheriff deputies were shot on property owned by a third party. *Id.* ¶¶ 66, 67. Plaintiffs allegedly were not involved in the incident, nor did they know the individuals who shot the deputies. *Id.* Nevertheless, plaintiffs claim to have suffered great emotional distress as a result of the incident. *Id.* They further allege that the Yuba County Sheriff's Department "gave false and misleading information to the mass media that left Plaintiffs portrayed as if they were the guilty party and labeled as criminals and frauds." *Id.* ¶ 67.

Plaintiffs also claim that on August 2, 2017, the Calaveras County Sheriff's Department and its Sheriff, Rick DiBasilio, raided the "Canna bless Church & Cal Farms Church," which "caused significant spiritual, mental, financial and physical harm to Plaintiffs." *Id.* ¶ 68. Five church members were allegedly arrested, but were later released without being charged. *Id.* Plaintiffs also claim Sheriff DiBasilio falsely reported to the media that these churches possessed drugs, illegal firearms, and chemicals, and that he was unaware that he raided a church. *Id.*

The second amended complaint also alleges that in late 2017, Ms. Lepp was arrested and charged with felonies for the cultivation and sale of marijuana. *Id.* ¶ 82. Plaintiffs appear to contend that Ms. Lepp's arrest was based on false statements defendant Spears provided to a state court judge. *Id.*

In addition to allegations concerning these six events, the second amended complaint is littered with various allegations concerning individuals and entities that are not parties to this action. For example, plaintiff allege that defendants violated the rights of Christopher Mark Heath and arrested him in May 2016. *Id.* ¶ 36. They also allege that in connection to the 2016 raids, defendants Vroman and Reisig filed retaliatory charged against two individuals who are not parties to this case. *Id.* ¶ 51. Plaintiffs further allege that after property owned by Ms. Lepp's friend caught fire, the fire department took no action and let the property burn. *Id.* ¶ 72.

The second amended complaint purports to allege 24 causes of action against 14 defendants. ECF No. 62 at 30-50.

/////

/////

V.    Motions to Strike

Two motions to strike pursuant to Rule 12(f) are pending.  First, defendants Michael Vroman and the Yolo County Sheriff's Department move to strike plaintiffs' supplemental complaint.  Plaintiffs filed that purported supplement after several of the defendants had moved to dismiss the second amended complaint.  ECF No. 111.  Second, defendant Olivera moves to strike plaintiffs Charles Lepp and Arron O'Connor's claims, arguing that these plaintiffs have already been "dismissed" from this action and were not granted leave to amend their claims.  ECF No. 68-1.

A.    Rule 12(f)'s Standards

Rule 12(f) authorizes the court to order stricken from any pleading "any redundant, immaterial, impertinent, or scandalous matter."  A matter is immaterial if it "has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds by* 510 U.S. 517 (1994).  A matter is impertinent if it consists of statements that do not pertain to and are not necessary to the issues in question.  *Id.*  Redundant matter is defined as allegations that "constitute a needless repetition of other averments or are foreign to the issue." *Thornton v. Solutionone Cleaning Concepts, Inc.*, 2007 WL 210586 (E.D. Cal. Jan. 26, 2007) (citing *Wilkerson v. Butler*, 229 F.R.D. 166, 170 (E.D. Cal. 2005)).  Finally, a matter is scandalous if it improperly casts a derogatory light on a party or other person.  *Skadegaard v. Farrell*, 578 F. Supp. 1209, 1221 (D.N.J. 1984); *Talbot v. Robert Matthews Distributing Co.*, 961 F.2d 654, 665 (7th Cir. 1992).  As with motions to dismiss for failure to state a claim, when ruling upon a motion to strike, the court must view the pleading under attack in the light more favorable to the pleader.  *Lazar v. Trans Union LLC*, 195 F.R.D. 665, 669 (C.D. Cal. 2000); *Multimedia Patent Trust v. Microsoft Corp.*, 525 F.Supp.2d 1200, 1207 (S.D. Cal. 2007).

B.    Defendants Vroman and Yolo County Sheriff's Department's Motion

After the moving defendants filed their motions to dismiss, plaintiffs filed a "supplemental complaint."  ECF No. 105.  The document purports to incorporate by reference the allegation in
/////

the second amended complaint and allege five additional claims. *Id.* Michael Vroman and the Yolo County Sheriff's Department move to strike the supplemental complaint.[3] ECF No. 111

Local Rule 220 requires that:

> [E]very pleading to which an amendment or supplement is permitted as a matter of right or has been allowed by court order shall be retyped and filed so that it is complete in itself without reference to the prior or superseded pleading. No pleading shall be deemed amended or supplemented until this Rule has been complied with.

Plaintiffs' supplemental complaint (ECF No. 105) is not complete without necessitating reference to prior pleadings. Additionally, more than 21 days had passed after the filing of defendants' responses to the operative complaint (ECF Nos. 68 & 105) and therefore leave of the court was required prior to the filing of any further amended complaint. *See* Fed. R. Civ. P. 15(a). Plaintiffs have not sought leave of court to file the supplemental complaint purporting to assert the additional claims. Accordingly, the "supplemental complaint" must be stricken.

C.     Defendant Olivera's Motion

Defendant Olivera moves to dismiss and/or strike claims alleged by Charles Lepp and Arron O'Connor, arguing that these plaintiffs have already been "dismissed" from this action and the court did not grant them leave to allege claims. ECF No. 68-1 at 4. Olivera contends that "Mr. Lepp and Mr. O'Connor cannot simply reappear as plaintiffs in subsequent pleadings." *Id.* Olivera appears to misunderstand the basis for the prior dismissal of the claims by O'Connor and Charles Lepp. Those claims were not dismissed without further leave to amend, then reasserted in the new complaint. Rather, Ms. Lepp was the sole signatory of the first amended complaint but that complaint included claims on behalf of other individuals and churches, including Mr. Lepp and Mr. O'Connor. ECF No. 7 at 1. Ms. Lepp is not an attorney therefore she cannot represent the interests of others who did not sign the complaint. For that reason, the claims on behalf of the other parties were stricken. But that did not preclude the other parties from asserting claims on their own behalf. Unlike the prior complaint, the second amended complaint only
/////

---

[3] With the exception of defendants Reisig and Net-5, all other defendants join in the motion to strike. ECF Nos. 112-114, 116.

alleges claims on behalf of Ms. Lepp, Mr. Lepp, and Mr. O'Connor, all three of whom have signed the complaint.[4]  ECF No. 62.

The court did not, as Olivera seems to argue, dismiss Mr. Lepp and Mr. O'Connor's claims with prejudice.  Instead, the court simply found that Ms. Lepp, as the sole signatory of the first amended complaint, could not allege claims on behalf of others.  That defect has been cured. Mr. Lepp and Mr. O'Connor have signed the second amended complaint and they now assert claims on their own behalf, which they are entitled to do.  Accordingly, Olivera's motion to strike is without merit.

VI.     Motions to Dismiss Pursuant to Rule 12(b)(1)

Defendants Lori Ajax, Rick DiBasilio, and the Calaveras County Sheriff's Department have moved to dismiss plaintiff's claims for lack of jurisdiction pursuant to Rule 12(b)(6).  ECF Nos. 69, 98.  Ms. Ajax argues that the claims against her are barred by the Eleventh Amendment. ECF No. 69-1 at 9-10.  Sheriff DiBasolio and the Calaveras County Sheriff's Department argue that Ms. Lepp's claims are barred by the doctrine of *res judicata* and the *Rooker-Feldman* doctrine, and that Mr. Lepp and O'Connor claims must be dismissed for lack of standing.  ECF No. 98-1 at 4-11.

A.     Rule 12(b)(1) Standards

On a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, plaintiff bears the burden of proof that jurisdiction exists.  *See, e.g., Sopcak v. Northern Mountain Helicopter Serv.*, 52 F.3d 817, 818 (9th Cir. 1995); *Thornhill Pub. Co. v. General Tel. & Electronics Corp.*,

---

[4]  Many of the moving defendants argue that claims on behalf of churches and individuals who did not sign the operative complaint must be dismissed since the three plaintiffs who signed the operative complaint may not represent the interest of others.  *See Johns v. County of San Diego*, 114 F.3d 874, 876-877 (9th Cir. 1997) (a non-lawyer has no authority to appear as an attorney for another, and general power of attorney does not give non-lawyer right to assert the personal constitutional claims of another); *Church of the New Testament v. United States*, 783 F.2d 771, 773-74 (9th Cir. 1986) ("The Church is an unincorporated association . . . . Unincorporated associations, like corporations, must appear through an attorney; except in extraordinary circumstances, they cannot be represented by laypersons").  Although the second amended complaint includes numerous allegations concerning third-parties, the court does not read it as alleging claims on behalf of those third-parties.  Indeed, the complaint clearly identifies Ms. Lepp, Mr. Lepp, and Mr. O'Connor as the only plaintiffs in this action.  ECF No. 62 at 1, 3.

594 F.2d 730, 733 (9th Cir. 1979). Different standards apply to a 12(b)(1) motion, depending on the manner in which it is made. *See, e.g., Crisp v. United States*, 966 F. Supp. 970, 971-72 (E.D. Cal. 1997). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air For Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack "asserts that the lack of subject matter jurisdiction is apparent from the face of the complaint." *Id.* If the motion presents a facial attack, the court considers the complaint's allegations to be true, and plaintiff enjoys "safeguards akin to those applied when a Rule 12(b)(6) motion is made." *Doe v. Schachter*, 804 F. Supp. 53, 56 (N.D. Cal. 1992).

Conversely, a factual attack, often referred to as a "speaking motion," challenges the truth of the allegations in the complaint that give rise to federal jurisdiction and the court does not presume those factual allegations to be true. *Thornhill*, 594 F.2d at 733. Although the court may consider evidence such as declarations or testimony to resolve factual disputes, *id.*; *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988), genuine disputes over facts material to jurisdiction must be addressed under Rule 56 standards. "[W]hen ruling on a jurisdictional motion involving factual issues which also go to the merits, the trial court should employ the standard applicable to a motion for summary judgment. Under this standard, the moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Trentacosta v. Frontier Pacific Aircraft Industries, Inc.*, 813 F.2d 1553, 1558 (9th Cir. 1987) (quotations and citations omitted) (emphasis added).

With these standards in mind, the court turns first to the motion by Ajax.

B.    Defendant Ajax's Motion

Ms. Ajax argues that plaintiffs' claims against her are barred by the Eleventh Amendment. ECF No. 69 at 9-10. Plaintiffs allege that Ms. Ajax is the Chief of the Bureau of Cannabis Control ("BCC"), which regulates and operates the licensing scheme for cannabis in California.[5] *Id.* ¶ 15. They claim that Ms. Ajax has enacted regulations, policies, and customs that

---

[5] The BCC is part of the California Department of Consumer Affairs (Cal. Bus. & Prof. Code § 26010), which is part of California's Business, Consumer Services, and Housing Agency (*Id.* § 100; Cal. Gov't Code § 12804).

discriminate against the free practice of their religion, Rastafari, by precluding the use of marijuana in religious practices. *Id.* ¶¶ 39, 49.

The Eleventh Amendment protects states, state agencies, and "arms of the state" from liability absent a clear waiver or consent to suit. *Quern v. Jordan*, 440 U.S. 332, 337–345 (1979); *see Howlett v. Rose*, 496 U.S. 356, 365 (1990); *Brown v. Cal. Dept. of Corrections*, 554 F.3d 747, 752 (9th Cir. 2009) ("California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court"). And "[a] suit against a state official in his or her official capacity . . . is no different from a suit against the State itself." *Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007). It follows that state officials sued in their official capacity for damages are typically entitled to immunity. *Id.* at 825.

The Eleventh Amendment "does not, however, bar actions for prospective declaratory or injunctive relief against state officers in their official capacities for their alleged violations of federal law." *Coal. To Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2015). But for a state official to be sued, there must be some connection with "enforcement of the act that is fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *Id.* (quotations omitted).

While plaintiffs' complaint is hardly a model of clarity, it names Ajax as the head of a state agency but also seeks money damages. There is no doubt any claim for money damages against Ajax is barred by the Eleventh Amendment. It is also apparent from plaintiffs' allegations as to Ms. Ajax that she is being sued in her official capacity as the Chief of the BCC. However, the operative complaint does not seek prospective relief against Ms. Ajax.[6] Accordingly, it appears that plaintiffs' claims against Ms. Ajax are barred by the Eleventh Amendment and must be dismissed. However, to the extent that plaintiffs were to also assert claims for declaratory or

*/////*

---

[6] Although plaintiffs request that all defendants be enjoined "from seizing the sacramental cannabis of Plaintiffs" (ECF No. 62 ¶ 217), there are no allegations that Ms. Ajax engaged in any conduct related to the seizure of plaintiffs' marijuana plants or, as the Chief of the BCC, is likely to do so.

injunctive relief, the claims would necessarily fail for failure to state a claim for the reasons discussed below.

        C.      Defendants' DiBasilio and Calaveras County Sheriff's Department Motion

        Sheriff DiBasilio and the Calaveras County Sheriff's Department move to dismiss Ms. Lepp's claims, arguing that her claims against them are barred by the doctrine of *res judicata* and the *Rooker-Feldman* doctrine. They further argue that Mr. Lepp's and O'Connor's claims must be dismissed for lack of standing. ECF No. 98-1 at 6-11.

        1.      Res Judicata

        Federal courts "are required to give state court judgments the preclusive effect they would be given by another court of that state." *Brodheim v. Cry*, 584 F.3d 1262, 1268 (9th Cir. 2009) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 84 (1984)). In California, *res judicata*, or claim preclusion, bars a second lawsuit between the same parties on the same cause of action. *People v. Barragan*, 32 Cal. 4th 236, 252 (2004). Collateral estoppel, or issue preclusion, bars the relitigation of issues that were actually litigated and determined in the first action. *Id*. at 252-53. The elements for applying either claim preclusion or issue preclusion to a second action are the same: "(1) A claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding." *Id*. at 253 (internal quotations omitted).

        In August 2017, plaintiff filed an action in the Calaveras County Superior Court. DiBasilio and Calaveras Cnty. Sheriff's Dept.'s Request for Judicial Notice ("RJN") (ECF Nos. 98-2 & 98-3), Ex. A.[7] Ms. Lepp's first amended complaint in that state case alleged that she was responsible for several churches, including the Cannabless Church and Calfarms Church. ECF No. 98-2 at 49 (RJN, Ex. B). That complaint also alleged that on August 2, 2017, Sheriff DiBasilio and the Calaveras County Sheriff's Department executed an unconstitutional search

_____

    [7] Defendants DiBasilio and the Calaveras County Sheriff's Department's request for judicial notice of state court records is granted. *See* ECF Nos. 98-2 & 98-3; *see also, e.g., Hunt v. Check Recovery Sys. Inc.*, 478 F. Supp. 2d 1157, 1160-61 (N.D. Cal. 2007) ("Judicial notice may be taken of 'adjudicative facts' such as court records [and] pleadings . . . .").

warrant to destroy and seize marijuana and kidnap and terrorize five members of Ms. Lepp's

church. *Id.* It also alleged that Sheriff DiBasilio falsely stated to the news that he was not aware

that there was churches in his county and that the churches "had guns, chemicals, drugs, and cash

. . . ." *Id.*

Predicated on these allegations, the state court complaint asserted 28 causes of action,

including civil rights claims by Ms. Lepp under 42 U.S.C. § 1983, purported claims under various

sections of Title 18, the Patriot Act, the Religious Land Use and Institutionalized Persons Act, the

Religious Freedom Restoration Act, the Health Insurance Portability and Accountability Act

("HIPAA"), as well as several state law claims. *Id.* at 37-48.

In the instant action[8], plaintiffs' allegations against the Sheriff DiBasilio and his

department are the same as those alleged in Ms. Lepp's state court action. Specifically, the

allegations in both cases are limited to: (1) The August 2, 2017 raid by Sheriff DiBasilio and the

Calaveras County Sheriff's Department, and (2) DiBasilio's alleged false statements to the media

regarding Ms. Lepp and/or her churches. Furthermore, many of the claims in this action are the

same as those alleged in Ms. Lepp's state court action. Although the instant case includes

additional claims that were not asserted in state court, "the doctrine of *res judicata* applies not

only to those claims actually litigated in the first action but also to those which might have been

litigated as part of that cause of action." *Clark v. Yosemite Comm. College Dist.*, 785 F.2d 781,

786 (9th Cir. 1986); *see Monterey Plaza Hotel Ltd. P'ship v. Local 483 of the Hotel Employees &*

*rest. Employees Union*, *AFL-CIO*, 215 F.3d 923, 928 (9th Cir. 2000) ("While [plaintiff] may have

added new acts to its federal complaint, the new allegations are insufficient to establish an

independent or different primary right than that which the state courts have already addressed.");

*Fed. Home Loan Bank v. Countrywide Fin. Corp.*, 214 Cal. App. 4d 1520, 1529 (2013) ("[T]he

rule is that the prior judgment is res judicata on matters which were raised or could have been

raised, on matters litigated or litigable.").

---

[8] Although Ms. Lepp commenced this action prior to the state court action, the claims against defendants DiBasilio and Calaveras County Sheriff's Department were first asserted in the second amended complaint. ECF No. 62. That complaint was filed in April 2018, after the state court action had concluded.

Furthermore, the state court action was brought against both Sheriff DiBasilio and the Calaveras County Sheriff's Department. As the injury involved and these defendants' alleged wrongful conduct are the same, the same primary right is implicated. Accordingly, under California's primary rights theory, Ms. Lepp's state and federal "causes of action" are the same. *See Harper v. City of Monterey*, 2012 WL 195040, at *5 (N.D. Cal. Jan. 23, 2012).

Lastly, the state court sustained DiBasilio and the Department's demurrer to Ms. Lepp's first amended complaint without leave to amend, dismissed the action with prejudice, and entered judgment in DiBasilio and the Department's favor. ECF No. 98-3 at 71-82 (RJN, Exs. G & H). Thus, the state court action resulted in a final judgment on the merits. *See, e.g., Boeken v. Philip Morris USA, Inc.*, 48 Cal. 4th 788, 793 (2010) ("[A] dismissal with prejudice is the equivalent of a final judgment on the merits, barring the entire cause of action."); *Silas v. Argent Mortg. Co., LLC*, 2017 WL 6055842, at *6 (E.D. Cal. Dec. 7, 2017) ("Under California law, sustaining a general demurrer and dismissing a case with prejudice constitutes a judgment on the merits.").

Accordingly, Ms. Lepp's claims against defendants DiBasilio and the Calaveras County Sheriff's Department are barred by the doctrine of *res judicata*.[9]

2.     Standing

DiBasilio and the Calaveras County Sheriff's Department also argue that Mr. O'Connor and Mr. Lepp lack standing to assert claims against them. ECF No. 98-1 at 11.

Standing is an element of subject matter jurisdiction. *Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136, 1140 (9th Cir. 2003). The requirement that a party have "standing" to bring an action is part of the case-or-controversy provision of Article III of the Constitution. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To have standing three elements must be satisfied:

> First, the plaintiff must have suffered an injury in fact-an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be fairly . . . trace[able] to the

---

[9] In light of this fact, the court does not reach DiBasilio and the Calaveras County Sheriff's Department's other arguments for dismissal of Ms. Lepp's claims.

challenged action of the defendant, and not . . . th[e] result [of] independent action of some third party not before the court. Third it must be likely as opposed to merely speculative that the injury will be redressed by a favorable decision.

*Id*. at 560-61 (internal citations and quotation marks omitted). To establish standing to obtain injunctive relief, "the plaintiff must demonstrate a real or immediate threat of an irreparable injury." *Clark v. City of Lakewood*, 259 F.3d 996, 1007 (9th Cir. 2001); *Culinary Workers Union, Local 226 v. Del Papa*, 200 F.3d 614, 617 (9th Cir 1999).

The complaint is devoid of any allegations that Mr. Lepp or Mr. O'Connor had any interaction with Sheriff DiBasilio and the Calaveras County Sheriff's Department, or that these plaintiffs had any interest in the churches raided in Calaveras County. Rather, the second amended complaint's allegations regarding DiBasilio and his department all concern Ms. Lepp. Consequently, Mr. Lepp or Mr. O'Connor have not asserted facts sufficient to demonstrate the requisite injury traceable to actions by these defendants for purposes of standing.

VII. Motions to Dismiss for Failure to State a Claim

All of the defendants moving for dismissal argue that the second amended complaint must be dismissed for failure to state a claim pursuant to Rule 12(b)(6).

A. Rule 12(b)(6) Standards

A complaint may be dismissed for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but it requires more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678.

Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. *Chubb Custom Ins. Co*., 710 F.3d

15

1    at 956.  Dismissal also is appropriate if the complaint alleges a fact that necessarily defeats the

2    claim.  *Franklin v. Murphy*, 745 F.2d 1221, 1228-1229 (9th Cir. 1984).

3         Pro se pleadings are held to a less-stringent standard than those drafted by lawyers.

4    *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam).  However, the Court need not accept as

5    true unreasonable inferences or conclusory legal allegations cast in the form of factual

6    allegations.  *See Ileto v. Glock Inc*., 349 F.3d 1191, 1200 (9th Cir. 2003) (citing *Western Mining

7    Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).

8         For purposes of dismissal under Rule 12(b)(6), the court generally considers only

9    allegations contained in the pleadings, exhibits attached to the complaint, and matters properly

10   subject to judicial notice, and construes all well-pleaded material factual allegations in the light

11   most favorable to the nonmoving party.  *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc*., 710

12   F.3d 946, 956 (9th Cir. 2013); *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

13        B.    Dismissal for Violation of Rule 8 and Failure to State a Claim

14        Like the prior complaint, the second amended complaint fails to provide defendants with

15   "fair notice" of the claims asserted against.  The second amended complaint is 51 pages long and

16   includes an additional 44 pages of attachments that do not directly relate to plaintiffs' claims.

17   The first 30 pages of the complaint consist of a prolix narrative of various events that are separate

18   and distinct from each other.  In the remaining 20 pages, plaintiffs purport to assert 24 causes of

19   action.  But the second amended complaint, like the prior one, fails to identify the specific facts

20   that support each separate cause of action.  Instead, each claim purports to incorporate by

21   reference the allegations presented in the complaint's first 30 pages.[10]  *See, e.g.,* ECF No. 62

22   ¶¶ 91, 101, 113, 118, 151, 181 198.  By structuring their complaint in this manner, plaintiffs fail

23   to apprise defendants of the specific facts that support each cause of action.

24        The most recent complaint also continues to rely heavily on vague and conclusory

25   allegations that fail to shed light on the factual basis for plaintiffs' claims.  For example, in

26

27        [10]  The only exception is plaintiffs' fifth causes of action, styled as "18 U.S.C. §§ 1983
     (excessive force)," which is not supported by any allegations, conclusory or otherwise.  Instead,
28   this claim is merely listed.  ECF No. 62 at 33.

support of their second cause of action, plaintiffs allege that defendants "have directly performed, or aided, abetted, counseled, commanded, induced, procured, encouraged, promoted, instigated, advised, willfully caused, participated in, enabled, contributed to, facilitated, directed, controlled, assisted in, or conspired in the commission of the above described acts," and that defendants' attempts "to silence Plaintiffs constitute interference with freedom of expression." *Id.* ¶¶ 92, 93. The vast majority of plaintiffs' other causes of actions are also supported entirely by similarly vague and conclusory statements.

Lastly, the second amended complaint, like the prior complaint, improperly joins unrelated claims against different defendants in a single action. As noted above, plaintiffs' complaint primarily concerns six discrete events involving different defendants and occurring over several years. As this court has previously observed, the Federal Rules of Civil Procedure do not allow a claimant to raise unrelated claims against different defendants in a single action. Instead, plaintiff may add multiple parties where the asserted right to relief arises out of the same transactions or occurrence and a common question of law or fact will raise in the action. *See* Fed. R. Civ. P. 20(a)(2). Unrelated claims involving different defendants must be brought in separate lawsuits.

These deficiencies alone warrant dismissal for failure to comply Rule 8 and for failure to state a claim. Additionally, a thorough review of the second amended complaint reveals that it fails to allege sufficient allegations to support each of the 24 asserted claims, which include claims under 42 U.S.C. §§ 1983 (claims 1, 2, 3, 5, 8, 17,18, 24) and 1985 (claim 23), Title 18 of the United States Code (claims 6, 7, 14, 15, 16, 20, 22), HIPAA (claim 10), the Religious Freedom Restoration Act (claims 9, 13), the Religious Land Use and Institutionalization Act (claim 12), California's Bane Act (claim 4), California's Proposition 215 (claim 11), California's Religious Freedoms Act (claim 19), and California's Right to Farm Act (claim 21).

1.  42 U.S.C. § 1983

To state a claim under § 1983, plaintiffs must allege (1) the violation of a federal constitutional or statutory right; and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Jones v. Williams*, 297 F.3d

930, 934 (9th Cir. 2002). An individual defendant is not liable on a civil rights claim unless the facts establish the defendant's personal involvement in the constitutional deprivation or a causal connection between the defendant's wrongful conduct and the alleged constitutional deprivation. *See Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978).

A municipal entity or its departments (such as a county or a county employee acting in an official capacity) is liable under section 1983 only if plaintiff shows that his constitutional injury was caused by employees acting pursuant to the municipality's policy or custom. *Mt. Healthy City Sch. Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 280 (1977); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 964 (9th Cir. 2008). In addition, such local government entities may not be held vicariously liable under section 1983 for the unconstitutional acts of its employees under a theory of respondeat superior. *See Board of Cty. Comm'rs. v. Brown*, 520 U.S. 397, 403 (1997). That is, a plaintiff may not sue any defendant on the theory that the defendant is automatically liable for the alleged misconduct of subordinate officers. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Plaintiffs' first and third cause of actions allege that defendants violated the Free Exercise Clause of the First Amendment. ECF No. 62 at 30-31, 32. These claims appear to be predicated on plaintiffs' contention that defendants have interfered with plaintiffs' ability to practice Rastafarianism by seizing their marijuana and failing to implement policies and/or regulations that provide an exemption for using and growing marijuana for religious purposes. *See generally id*. at 6-30.

The First Amendment, however, does not forbid generally applicable laws proscribing the production or use of a controlled substance, even where doing so would substantially burden religious practices. *See Employment Division v. Smith*, 586 F.3d at 879 ("[T]he right of free exercise does not does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes . . . conduct that his religion prescribes.'"); *Guam v. Guerrero*, 290 F.3d 1210, 1215-16 (9th Cir 2002) ("Guam may constitutionally punish Guerrero for importing a controlled substance, even if doing so

substantially burdens his ability to practice his religion."). And plaintiffs' allegations fail to demonstrate that defendants' actions precluded them from practicing their religion, including the practice of using marijuana.

Plaintiffs also fail to state a First Amendment retaliation claim (claim 2). ECF No. 62 at 31. "The law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). "[T]o demonstrate a First Amendment violation, a plaintiff must provide evidence showing that 'by his actions the defendant deterred or chilled the plaintiff's political speech and such deterrence was a substantial or motivating factor in the defendant's conduct.'" *Lacey v. Maricopa County*, 693 F.3d 896, 916 (9th Cir. 2012) (quoting *Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999)). The second amended complaint does not allege that any of the plaintiffs engaged in protected speech, nor does it identify the specific acts defendants allegedly took in an attempt to chill protected speech.

Plaintiffs' eighth cause of action, which alleges a violation of the Fourth Amendment's proscription against unreasonable searches and seizures, is also deficiently pled. The Fourth Amendment prohibits "a search conducted pursuant to an ill-begotten or otherwise invalid warrant." *Bravo City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011). To prevail on a claim that a warrant was obtained through deception, plaintiffs "must show that the defendant deliberately or recklessly made false statements or omissions that were material to the finding of probable cause." *KRL v. Moore,* 384 F.3d 1105, 1117 (9th Cir. 2004); *Ewing v. City of Stockton*, 855 F.3d 1218, 1223 (9th Cir. 2009). Additionally, "in order to claim the protection of the Fourth Amendment, a [plaintiff] must demonstrate that he personally has an expectation of privacy in the place search, and that his expectation is reasonable." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998).

The 2014 raid of Ms. Lepp's home and the 2016 raid of her business were the only searches of property in which any of the plaintiffs allegedly had an interest. However, plaintiffs provide no factual allegation demonstrating that the 2014 warrant was invalid, and their
/////

conclusory statement that the 2016 warrant was procured by "omit[ing] critical information" is insufficient to demonstrate that the warrant was improperly obtained. *See* ECF No. ¶ 51.

Nor do plaintiffs sufficiently allege a wrongful arrest claim under the Fourth Amendment (claim 17). As a threshold matter, the complaint does not allege that Mr. Lepp or Mr. O'Connor were arrested. Consequently, these plaintiffs cannot state a wrongful arrest claim. As for Ms. Lepp, she fails to allege facts demonstrating that her arrest was made in the absence of probable cause. *See Manuel v. City of Joliet, III*, __ U.S. __, 137 S.Ct. 911, 918 (2017) ("The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause.").

Plaintiffs also cannot maintain their excessive bail claim (claim 18). Again, the operative complaint does not allege that Mr. Lepp or Mr. O'Connor were arrested. Plaintiffs also ignores that under California law, courts, not individual law enforcement, establish countywide bail schedules. Judges have the discretion to set the exact bail amount in any particular case. *Dant v. Sup. Ct.*, 61 Cal. App. 4th 380, 386 (1998) (stating "[t]he courts are responsible for adopting a countywide schedule of bail"). To hold law enforcement officers liable for excessive bail, in addition to establishing that bail was excessive, plaintiffs must also demonstrate that the officer was the proximate cause of his bail enhancement. *See Galen v. County of Los Angeles*, 477 F.3d 652, 663 (9th Cir. 2007). To do this, plaintiffs must assert facts which show that the officers prevented the judge who set bail from exercising her/his independent judgment. *Id.* Thus, the plaintiffs would have to allege facts, which if true, show that the defendants "deliberately or recklessly misled the [judge setting bail], and that his bail would not have been unconstitutionally excessive but for the officers' misrepresentations." *Id.* at 664. No such facts are alleged.

Plaintiffs' remaining § 1983 claim (claim 24) is for malicious prosecution. ECF No. 62 at 48. In general, "a claim of malicious prosecution is not cognizable under 42 U.S.C. § 1983 if process is available within the state judicial system to provide a remedy. However, an exception exists to the general rule when a malicious prosecution is conducted with the intent to deprive a person of equal protection of the laws or is otherwise intended to subject a person to a denial of constitutional rights. Under California law, in order to allege malicious prosecution, a plaintiff

must allege that a "prior proceeding, commenced by or at the direction of the malicious prosecution defendant, was (1) pursued to a legal termination favorable to the plaintiff; (2) brought without probable cause; and (3) initiated with malice." *Villa v. Cole*, 4 Cal. App. 4th 1327, 1335 (1992); *see also Venegas v. Wagner*, 704 F.2d 1144, 1146 n.2 (9th Cir.1983) (recognizing that favorable termination is a required element for a § 1983 malicious prosecution claim).

Although the second amended complaint alleges that Ms. Lepp was charged with multiple felonies for growing and selling marijuana (ECF No. 62 ¶ 51), it does not allege that the charges were brought without probable cause or that Ms. Lepp received a favorable termination.

Lastly, plaintiffs fail to sufficiently allege a § 1983 claim against the municipal defendants under *Monell*. The second amended complaint does not identify any specific policy, practice, or custom that resulted in the violation of their civil rights. *See Galen v. County of Los Angeles*, 477 F.3d 652, 667 (9th Cir. 2007) (to succeed on a Monell claim a plaintiff must establish that the entity "had a deliberate policy, custom, or practice that was the moving force behind the alleged constitutional violation he suffered") (internal quotation marks omitted)); *Brown v. Contra Costa County*, 2014 WL 1347680, at *8 (N.D. Cal. Apr. 3, 2014) ("Pursuant to the more stringent pleading requirements set forth in *Iqbal* and *Twombly*, a plaintiff suing a municipal entity must allege sufficient facts regarding the specific nature of the alleged policy, custom or practice to allow the defendant to effectively defendant itself, and these facts must plausibly suggest that plaintiff is entitled to relief.") (citing *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012)).

### 2.    42 U.S.C. § 1985

The allegations in the second amended complaint are also insufficient to support plaintiffs' claim under 42 U.S.C. § 1985. Plaintiffs do not allege that an officer was prevented from performing their duties, nor do they allege that any of the defendants intimidated a party, witness, or juror. *See* 42 U.S.C. § 1985(1) (creating a civil action for preventing an officer from performing his or her duties); § 1985(2) (creating a civil action for obstructing justice or intimidating a party, witness, or juror).

21

Nor do they allege facts that could support relief under § 1983(3). The elements of a § 1985(3) claim are: (1) the existence of a conspiracy to deprive the plaintiff of the equal protection of the laws; (2) an act in furtherance of the conspiracy; and (3) a resulting injury. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1141 (9th Cir. 2000) (citing *Scott v. Ross*, 140 F.3d 1275, 1284 (9th Cir. 1998)). The first element requires that there be some racial or otherwise class-based "invidious discriminatory animus" for the conspiracy. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268-69 (1993); *Trerice v. Pedersen*, 769 F.2d 1398, 1402 (9th Cir. 1985). Moreover, a plaintiff cannot state a conspiracy claim under § 1985 in the absence of a claim for deprivation of rights under 42 U.S.C. § 1983. *See Caldeira v. Cnty. of Kauai*, 866 F.2d 1175, 1182 (9th Cir. 1989) (holding that "the absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations"), *cert. denied*, 493 U.S. 817 (1989). As discussed above, plaintiffs fail to allege a § 1983 claim. Furthermore, the second amended complaint contains no allegations that plaintiffs were subjected to racial or class-based discriminatory animus.

### 3. Title 18 claims

Plaintiffs allege that defendants violated 18 U.S.C. §§ 241, 242, 247, 1001, 1512, 1513, and 1514. But none of these criminal statutes provide for a private right of action. *See, e.g., Banuelos v. Gabler*, 2018 WL 2328221 (E.D. Cal. May 22, 2018) (holding that 18 U.S.C. §§ 241, 242, 1512, and 1513 do not provide for a private right of action); *Hiramanek v. Clark*, 2013 WL 12308479, at *3 (N.D. Cal. Mar. 25, 2013) (holding that 18 U.S.C. §§ 241 and 247 do not provide a private right of action); *Willems v. Apartment Inv. And Management Co. AIMCO*, 72 Fed. Appx. 700 (2003) ("18 U.S.C. § 1001 does not provide a private right of action."); *Canning v. Veitch*, 2015 WL 7444260, at *2 (N.D.N.Y. Oct. 16, 2015) (no private right of action under 18 U.S.C. § 1514). Accordingly, claims six, seven, fourteen, fifteen, sixteen, twenty, and twenty-two must be dismissed.

### 4. HIPAA

Plaintiffs also allege that the defendants, with the exception of Ms. Ajax and Jeffery Reisig, violated HIPAA "during their raids." ECF No. 62 at 38. HIPAA, however, does not

1   provide a private right of action.  *United States v. Streich*, 560 F.3d 926, 935 (9th Cir. 2009).

2   Accordingly, this claim must also be dismissed.

3                   5.      The Religious Freedom Restoration Act

4       Plaintiffs purport to allege two claims for violation of the Religious Freedom and

5   Restoration Act, 42 U.S.C. § 2000BB-1 ("RFRA").  ECF No. 62 at 36-37, 40.  However, the

6   United States Supreme Court has held that the RFRA, as applied to states, is unconstitutional.

7   *City of Boerne v. Flores*, 521 U.S. 507 (1997); *see also Guru Nanak Sikh Soc. Yuba City v.*

8   *County of Sutter*, 456 F.3d 978, 985 (9th Cir. 2006) (recognizing that *Boerne* held the RFRA

9   unconstitutional).  Because plaintiffs' claims are brought only against state actors, their RFRA

10  claim must be dismissed.

11                  6.      The Religious Land Use and Institutionalization Act

12      Plaintiffs' twelfth cause of action alleges that defendants violated the Religious Land Use

13  and Institutionalized Persons Act ("RLUIPA").  ECF No. 62 at 39-40.

14      The RLUIPA provides that "No government shall impose or implement a land use

15  regulation in a manner that imposes a substantial burden on the religious exercise of a person,

16  including a religious assembly or institution, unless the government demonstrates that imposition

17  of the burden on that person, assembly or institution (A) is in furtherance of a compelling

18  government interest; and (B) is the least restrictive means of furthering that compelling

19  governmental interest."  42 U.S.C. § 2000cc(a)(1).  A substantial burden is not an "inconvenience

20  on religious exercise," but instead is "a significantly great restriction or onus upon such exercise."

21  *Int'l Church of Foursquare Gospel v. City of San Leandro*, 673 F.3d 1059, 1067 (9th Cir. 2011).

22  Thus, a substantial burden exists when government action puts "substantial pressure on an

23  adherent to modify his behavior and to violate his beliefs."  *Guru Nanak Sikh Soc. of Yuba City v.*

24  *Cnty. of Sutter*, 456 F.3d 978, 986 (9th Cir. 2006).

25      Plaintiffs allege that defendants have violated their rights under the RLUIPA because

26  "[n]ot one county in the state of California has a 'permitted use' for this type of church."  ECF

27  No. 62 at 40.  Plaintiffs, however, do not identify any ordinance or land use regulation that is

28  /////

                                                    23

burdening the free exercise of their religion, nor do they explain how they have been precluded from practicing their religion due to a land use regulation.

### 7. State Law Claims

Plaintiffs have failed to allege a cognizable federal claim. Without a viable federal question claim, plaintiff have not provided a basis for supplemental jurisdiction over their state law claims. Nonetheless, in light of the non-appearing defendant, the court addresses plaintiffs' state law claims for violation of California's Bane Act (claim 4), California's Proposition 215 (claim 11), California's Religious Freedoms Act (claim 19), and California's Right to Farm Act (claim 21). These claims fail as a matter of law because plaintiffs have failed to allege compliance with California's Government Claims Act.

The Government Claims Act ("GCA") requires that a party seeking to recover money damages from a public entity or its employees submit a claim to the entity before filing suit in court, generally no later than six months after the cause of action accrues. Cal. Gov't Code §§ 905, 911.2, 945, 950.2. Timely claim presentation is not merely a procedural requirement of the GCA but is an element of a plaintiff's state law claims. *Shirk v. Vista Unified Sch. Dist.*, 42 Cal. 4th 201, 209 (2007). Thus, when a plaintiff asserts a claim subject to the GCA, he must affirmatively allege in the complaint compliance with the claim presentation procedure, or circumstances excusing such compliance. *Id.* This requirement applies in federal court as well. *Karim–Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988).

Plaintiffs only allege claims against county agencies and employees. They fail, however, to allege that they timely submitted a claim as required by the GCA. Accordingly, their state law claims must be dismissed.

### C. Claims against Defendant Vroman

Defendant Vroman, in addition to attacking the sufficiency of plaintiffs' allegation, argues that he is entitled to immunity for any action taken as a district attorney. ECF No. 75-1 at 8-9.

The allegations against Mr. Vroman, a deputy district attorney for the Yolo County District Attorney's Office, relate to his involvement in obtaining a search warrant. *See* ECF No. 62 ¶¶ 17, 50-52. It is well-settled that a prosecutor is entitled to absolute immunity from a civil

action for damages when he performs a function that is "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). Functions that are protected by absolute immunity include appearing at a probable cause hearing to support an application for a search warrant, preparing and filing an arrest warrant, initiating a prosecution, and presenting the state's case. *KRL v. Moore*, 384 F.3d 1105, 1110-11 (9th Cir. 2004).

Plaintiffs' claims against Vroman are, consequently, barred by absolute immunity.

## VIII.   Leave to Amend

The only remaining matter is whether to afford plaintiffs' leave to amend their claims against the moving defendants. As detailed above, the second amended complaint is no less prolix or convoluted than the prior ideation. It does not come remotely close to providing a short and plain statement of the plaintiffs' claims as required by Rule 8, and instead is filled will convoluted and conclusory allegations, many having no relation to the plaintiffs. Additionally, the most recent complaint continues to improperly join claims and defendants in a single action in violation of Rule 20. Despite the court previously explaining the pleading requirements under the Federal Rules, the most recent complaint remains deficient and demonstrates that the court's instructions were disregarded. In light of the foregoing, the court finds that granting further leave to amend would be futile.

Accordingly, plaintiffs' claims against the moving defendants should be dismissed without leave to amend. *See Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (while the court ordinarily would permit a pro se plaintiff to amend, leave to amend should not be granted where it appears amendment would be futile).

## IX.   Set Aside Default

Defendant Net-5 moves to set aside the clerk's entry of its default, arguing that it was not properly served, it has numerous meritorious defenses, and plaintiffs will not suffer prejudice if the default is set aside. ECF No. 128.

### A.   Background

Net-5 was first named as a defendant in plaintiff's second amended complaint. ECF No. 62. On April 27, 2018, one week after that complaint was filed, a summons was issued for Net-5.

25

ECF No. 67.  Plaintiffs' proof of service reflects that on the same date, plaintiffs left a copy of the summons and complaint with Elizabeth Marshall at 720 Yuba Street, Marysville, California. ECF No. 73.  After Net-5 failed to respond to the complaint within 21 days (*see* Fed. R. Civ. P. 12(a)(1)(A)), plaintiffs requested the entry of its default (ECF No. 91), which the clerk entered on June 1, 2018 (ECF No. 93).  Net-5 now moves to set aside the clerk's entry of its default.  ECF No. 128.

### B.  Relevant Legal Standards

Under Rule 55(a), the court must enter default against a party who has "failed to plead or otherwise defend."  The court also has the power to set aside the entry of default "for good cause."  Fed. R. Civ. P. 55(c).  The U.S. Court of Appeals for the Ninth Circuit treats the standard for good cause to set aside an entry of default under Rule 55(c) the same as the excusable neglect standard for relief from judgment under Rule 60(b) (1).  *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 697 (9th Cir. 2001); *Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.*, 375 F.3d 922, 925–26 (9th Cir. 2004).  In deciding whether good cause exists to set aside default, the court considers: "(1) whether the plaintiff will be prejudiced, (2) whether the defendant has a meritorious defense, and (3) whether culpable conduct of the defendant led to the default."  *Brandt v. Am. Bankers Ins. Co. of Fla.*, 653 F.3d 1108, 1111 (9th Cir. 2011) (quoting *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir.1984)).  This tripartite test is "disjunctive," meaning that the district court is free to deny the motion if any of these three factors is shown to exist. *American Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1108-09 (9th Cir. 2000).

"A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed. R. Civ. P. 4."  *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc*., 840 F.2d 685, 688 (9th Cir. 1988).  "Entry of default must be set aside if the defendant was not served properly."  *Hale v. Evidencia Display*, 2015 WL 4624881, at *2 ( C.D. Cal. Aug. 3, 2015).

To properly serve a municipal corporation, a plaintiff must serve a copy of the summons and complaint on its chief executive officer; or in a manner proscribed by state law for serving such a defendant.  Fed. R. Civ. P. 4(j).  Under California law, substitute service may be effected

by leaving a copy of the summons and compliant at the person's usual place of business with "a person apparently in charge of his or her office thereof, and by thereafter mailing a copy of the summons and compliant . . . to the person to be served at the place where a copy of the summons and compliant were left . . . ." Cal. Civ. Proc. Code § 415.20(b).

C.    Discussion

Net-5 first argues that its default should be set aside because it was not properly served. ECF No. 128-2 at 4-5.

Plaintiffs attempted to serve Net-5 by leaving a copy of the summons and complaint with Elizabeth Marshall, a Records Clerk for the Yuba County Sheriff's Department. ECF No. 84; Declaration of Elizabeth Marshall (ECF No. 128-1) ¶¶ 1, 3. In her declaration, Ms. Marshall states that she has no association with Net-5, she has not participated in its operations, and she is not authorized to accept service for Net-5. ECF No. 128-1 ¶ 3. She further states that she recalls being handed court documents related to this case in May 2018, but she was never asked if she could accept service on behalf of Net-5. *Id*. ¶ 5. She further states that if she was aware that the documents were an attempt to serve Net-5, she would have rejected the documents. *Id*. 6.

As a threshold matter, the record before the court indicates that Net-5 is an intergovernmental association, not a separate local entity. *See Hervey v. Estes*, 65 F.3d 784, 792 (9th Cir. 1995) (finding that a joint narcotic task force was an intergovernmental association, not a municipality or local governmental entity, because the entities that created the task force did not intend to create a separate legal entity subject to suit). Net-5's Memorandum of Understanding ("MOU") provides that each agency participating in the task force "shall be responsible for the acts of its participating officer(s) and shall incur any liabilities arising out of the services and activities of those officers while participating in" Net-5. ECF No. 128-3 at 8. It further provides that personnel assigned to Net-5 "shall be deemed to be continuing under the employment of their jurisdictions and shall have the same powers, duties, privileges, responsibilities and immunities as are conferred upon them as peace officers in their own jurisdictions." *Id*.

This evidence strongly suggests that the agencies participating in Net-5 did not intend to create a separate legal entity subject to suit. *See Timberlake by Timberlake v. Benton*, 786 F.

Supp. 676, 68288 (M.D. Tenn. 1992) (proper examination is whether "the parties to this mutual aid agreement created a separate legal entity.").  Consequently, plaintiffs needed to separately serve the agencies and/or officers participating in the Net-5 operations that allegedly resulted in a violation of plaintiffs' rights.

Even if Net-5 is a separate legal entity subject to suit, service still remains deficient. Plaintiffs did not serve a copy of the summons and complaint on Net-5's chief executive officer. Fed. R. Civ. 4(j)(2)(A).  Nor did they complete substitute service under California law, which requires that after the summons and complaint is left at the defendant's business, a copy of the same is subsequently mailed "to the person to be served at the place where a copy of the summons and compliant were left . . . ."  Cal. Civ. Proc. Code § 415.20(b); *see* Fed. R. Civ. P. 4(j)(2)(B).

Aside from the deficiencies in service, setting aside default is appropriate since Net-5 has meritorious defenses to plaintiff's claims.  As discussed above, the operative complaint is wholly deficient and fails to state a claim for relief against any defendant.

Accordingly, Net-5's motion to set aside the clerk's entry of its default must be granted.

X.     Conclusion

Accordingly, it is hereby ORDERED that:

1. Plaintiffs' shall show cause, in writing, within 14 days of this order, why this their claims against defendant Reisig should not be dismissed for failure to effect service of process within the time prescribed by Rule 4(m) and/or failure to prosecute their claims against him.  *See* Fed. R. Civ. P. 41(b).

2. The September 5, 2018 order to show cause is discharged and no sanctions are imposed.

Further, it is RECOMMENDED that:

1. Plaintiffs' motion under Rule 60(d)(3) (ECF No. 109) be denied;

2. Defendants Michael Vroman and Yolo County Sheriff's Department motion to strike plaintiffs' supplemental complaint (ECF No. 111) be granted;

/////

28

3.  Defendants' motions to dismiss and/or strike (ECF Nos. 68, 69, 70, 75, 95, 98) be granted as described herein; and

4.  Defendant Net-5's motion to set aside default (ECF No. 128) be granted and the Clerk be instructed to set aside its default.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  March 11, 2019.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE